**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 96-41164

(Summary Calendar)
_____


UNITED STATES OF AMERICA,

                             Plaintiff-Appellee,

versus


JUAN ALFREDO DURON,

                             Defendant-Appellant.


Appeal from the United States District Court
For the Southern District of Texas
(M-96-CR-117-4)

August 21, 1997

Before WIENER, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

        Juan Alfredo Duron appeals the district court's denial of his

motion to suppress "any evidence discovered" as a result of his

arrest for drug distribution.  Duron contends that this "evidence"

should have been suppressed because the arresting officers lacked

        [*]    Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

probable cause to arrest him.  We affirm.

I

On May 22, 1996, Sergeant Antonio Sanchez ("Sanchez"), an investigator with the Texas Department of Public Safety (Narcotics Service) ("DPS"), observed Adolfo Moreno-Rios ("Rios"), a suspected drug trafficker, driving a red Ford pickup truck.  Sanchez testified in district court that he saw Rios meet with a confidential informant ("CI") in the parking lot of a Wal-Mart store.

The CI later told Sergeant Jose Fidencio Guzman ("Guzman"), a Texas DPS officer who testified at the suppression hearing, that Rios and the CI had discussed Rios's supplying seventy pounds of marijuana to a buyer.  The CI had agreed to supply the load vehicle, a red Ford Taurus, which was to be retrieved from a local Burger King.  After establishing surveillance of the Burger King on May 23, 1996, an officer watched the red pickup truck drop Duron at the restaurant.  A male, later identified as Jose Angel Rios (Rios's son), drove the truck.  An officer watched Duron enter the red Taurus; the surveillance team observed Duron driving the Taurus to Rios's residence and parking in the rear of the residence in an area surrounded by a high wooden fence.

Approximately thirty minutes after arriving at Rios's residence, the surveillance team observed the red Taurus leaving the residence.  The vehicle proceeded in the direction of a local gas station.  The team lost the vehicle briefly, but subsequently

reacquired it parked at the gas station. The team had been unable to see the driver of the vehicle during the trip to the station and the driver was not in the vehicle when the officers arrived at the station.

During the surveillance, Guzman spoke with the CI on a mobile telephone. The CI reported that the marijuana purchasers suspected that police officers were in the area and would therefore not retrieve the car and the marijuana. Based on this information, Guzman ordered the officers to verify that the car contained marijuana. The officers found approximately seventy-five pounds of marijuana in the trunk of the car. Guzman instructed an officer to drive the red Taurus to the police station.

A few minutes after the Taurus left the gas station, members of the surveillance team observed the red Ford pickup truck leave Rios's residence with three occupants. Shortly thereafter, the truck drove into the gas station. Guzman instructed the officers to detain the truck. After the occupants of the truck were identified as Adolfo Moreno-Rios, Jose Angel Rios and Duron, Guzman ordered Sanchez to arrest them.

After the district court denied Duron's motion to suppress, Duron entered a conditional guilty plea[1] to conspiracy to possess with intent to distribute less than fifty kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. The

---

[1]    Duron specifically preserved his right to appeal the district court's ruling on his suppression motion.

district court imposed an eighteen month jail sentence, a three year term of supervised release, and a $100 assessment. Duron appeals the district court's denial of his suppression motion, arguing that the officers lacked probable cause to arrest him and that therefore "any evidence discovered" as a result of his arrest should have been suppressed because such evidence is the product of an illegal arrest.[2]

## II

"Appellate review of a district court's ruling on a motion to suppress based on testimony at a suppression hearing is subject to the clearly erroneous standard." *United States v. Gonzales*, 79 F.3d 413, 419 (5th Cir.), *cert. denied*, __ U.S. __, 117 S. Ct. 183, 136 L. Ed. 2d 122 (1996). We review questions of law *de novo*, but we accept factual findings unless the district court's findings were clearly erroneous or influenced by an incorrect view of the law. *Id.* Furthermore, we view the evidence in the light most favorable to the party prevailing below, except where such a view is either not consistent with the district court's findings or is clearly erroneous considering the evidence as a whole. *Id.*

---

[2] Duron never specifies what "evidence" should have been suppressed. There is some mention in the suppression hearing transcripts of statements Duron allegedly made at the police station after receiving *Miranda* warnings, but Duron does not mention these statements, or explain their content, in his appellate brief. In any event, because we find that the officers had probable cause to arrest Duron, "any evidence discovered" as a result of his arrest need not have been suppressed.

We review *de novo* the district court's ultimate legal conclusion that the police officers had probable cause to arrest Duron. *United States v. Harlan*, 35 F.3d 176, 178 (5th Cir. 1994). Probable cause exists when the facts and circumstances known to the arresting officer are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed and the arrested person is the guilty person. *United States v. Ramirez*, 963 F.2d 693, 698 (5th Cir.), *cert. denied*, 506 U.S. 944, 113 S. Ct. 388, 121 L. Ed. 2d 296 (1992). Mere association with a known criminal does not, by itself, create probable cause for arrest. *Id.* In order to find probable cause based on association with persons engaging in criminal activity, some additional circumstances from which it is reasonable to infer participation in criminal enterprise must be shown. *Id.*

We find such additional circumstances in this case. Duron was not just seen in the company of a suspected drug trafficker. Officers saw Duron being transported to the location of the load vehicle in the red pickup truck in which Rios had discussed a drug transaction with the CI. In addition, officers observed Duron driving the load vehicle to Rios's residence, where the vehicle was to be loaded with marijuana. When the officers later opened the truck of the load vehicle at the gas station, they discovered over seventy pounds of marijuana. Finally, Duron accompanied Rios and his son to the gas station))the location of the marijuana-laden

load vehicle))in the red pickup truck on the day of the scheduled drug transaction. Based on this evidence, all of which was known to Guzman at the time he ordered Duron's arrest, a reasonable officer could have believed that Duron was involved in the planned distribution of over seventy pounds of marijuana. The district court therefore did not err in denying Duron's motion to suppress.

AFFIRMED.